IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-HC-02040-M-RJ

| | | |
|---|---|---|
| CLAUDE MORDECIA STEVENS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| STATE OF NORTH CAROLINA, | ) | |
| | ) | |
| Respondent. | ) | |

This cause is before the court on respondent's motion for summary judgment, see Mot. [D.E. 15], and petitioner's "Opposing Motion for Summary Judgment [sic]," Mot. [D.E. 28]. For the following reasons, the court grants respondent's motion and denies petitioner's motion.

Relevant Procedural History:

On February 14, 2023, Claude Mordecia Stevens ("petitioner"), a state inmate, filed *pro se* a petition for a writ of habeas corpus under 28 U.S.C. § 2254 collaterally attacking his July 26, 2019, convictions in Wake County. See Pet. [D.E. 1]; Pet. Attach [D.E. 1–1].

On June 12, 2023, the court, *inter alia*, allowed the action to proceed. Order [D.E. 5].

On October 5, 2023, respondent filed a response, [D.E. 14], a motion for summary judgment, Mot. [D.E. 15], a statement of material facts, [D.E. 16], an appendix, [D.E. 17], a memorandum, [D.E. 18], a proposed sealed document, [D.E. 19], a motion to seal, Mot. [D.E. 20], a memorandum in support of the motion to seal, see [D.E. 21], and a proposed sealed document, [D.E. 22]. Also on that date, petitioner moved for entry of default. Mot. [D.E. 23].

Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified petitioner about the motion for summary judgment, the response deadline, and the consequences of failing to respond. [D.E. 24].

On October 31, 2023, petitioner filed a self-styled "PRO-SE Party of Right to Motion for NON-Sealed Documents [sic]," [D.E. 26], a "reply to the Respondent's Answer [sic]," [D.E. 27], and an "Opposing Motion for Summary Judgment [sic]," Pet'r's Mot. [D.E. 28].

On August 2, 2024, the court granted respondent's motion to seal and denied petitioner's motion for entry of default. See Order [D.E. 30].

### Background:

Petitioner's underlying criminal case was summarized on appeal as follows:

Defendant met P.L. ("Mrs. Lowe") and her twin sons B.L. ("Brad") and A.L. ("Adam") at a YMCA pool in the summer of 2007. Brad and Adam were 10 years old and between elementary and middle school. Mrs. Lowe and her sons saw Defendant at the pool often that summer and, over the coming months, visited Defendant at his home. By August of 2007, Defendant hired Mrs. Lowe as his administrative assistant for a school Defendant operated out of his house.

Though Defendant and Ms. Lowe never developed a romantic relationship, Mrs. Lowe grew increasingly trusting of Defendant, including trusting him with Brad and Adam. Mrs. Lowe and her children began to spend time with Defendant at his home after work. Eventually, Mrs. Lowe trusted Defendant enough to allow Brad and Adam to spend the night alone at his home. On these occasions, Defendant, Brad, and Adam would sometimes sit naked in Defendant's hot tub, and either Brad, Adam, or both would sleep with Defendant in his bed.

Mrs. Lowe and her sons also vacationed with Defendant between 2007 and 2015. For example, in late September 2007, Defendant, Mrs. Lowe, and her sons traveled to Disney World for a week to celebrate the twins' 11th birthday. The Lowes and Defendant later made additional trips, including two cruises and multiple visits to amusement parks. Defendant also took Brad and Adam to bowling tournaments in New York and Illinois. Mrs. Lowe joined her sons on trips when they were young, but she allowed Brad and Adam to travel alone with Defendant as they grew older. Defendant would sometimes share a room with Brad or Adam on these vacations. Brad stayed in Defendant's room on the 2007 trip to Disney World.

2

When Brad and Adam were in middle school, Defendant began sexually abusing them. Defendant would isolate one of the boys in his bedroom, lock the door, and request a full-body massage in his underwear. Those massages eventually progressed to nude massages ending in fellatio or penetrative anal sex. Defendant sexually abused the boys frequently, including when Mrs. Lowe was present elsewhere in Defendant's house. Defendant also sexually abused Brad and Adam on his many trips with them and their mother.

Defendant stopped abusing Brad when the twins were in their freshman year of high school. Defendant continued abusing Adam after this time.

In the summer of 2016, when he was 19 years old, Brad suffered an emotional breakdown and told his girlfriend about Defendant's sexual abuse. Brad asked Adam if he had also been abused, and Adam disclosed that he had. The twins told their mother about the abuse a short time later, leading her to call police.

In July 2016, Brad and Adam spoke with police and Leigh Howell, a child abuse evaluation specialist at the child advocacy center SAFEchild, about Defendant's abuse. During a forensic interview with Ms. Howell, Brad stated that he thought Defendant began abusing him when he was 11 or 12 years old. A few minutes later in the same interview, Brad told Ms. Howell that he may have been between the ages of 12 and 13 when the abuse started. Adam told Ms. Howell that he was first abused by Defendant at age 12 or 13.

Defendant was subsequently indicted on two counts of indecent liberties with a child, 10 counts of statutory sex offense with a person who is 13, 14, or 15 years old, and 10 counts of first-degree sexual offense with a child.

During a pretrial hearing on 23 July 2019, the State moved under Rule 404(b) of the North Carolina Rules of Evidence to introduce the testimony of a witness, P. L. ("Patrick"), who also claimed to have been abused by Defendant as a boy. Patrick testified that when he was a 12-year-old boy scout, Defendant was one of his assistant scoutmasters and had a good relationship with Patrick's father, who was the troop scoutmaster. Patrick also testified that Defendant groped him during a 1999 scouting trip. Patrick, Defendant, and another scout were alone together in the woods for an orienteering exercise when Defendant isolated Patrick from the other scout and grabbed Patrick's genitals through his pants for about thirty seconds. When Defendant stopped, Patrick and the other scout ran away from Defendant, and the scouting trip concluded without further incident; Patrick did not report the fondling at that time out of shame. Defendant continued to be friendly with Patrick's parents, and Patrick's family was invited to a New Year's Eve party at Defendant's home later that year. At the party, Defendant told the children in attendance that they should enjoy his hot tub. Patrick's parents considered spending the night at Defendant's house, but Patrick convinced them to take the family home.

Following Patrick's testimony in the pre-trial hearing, the State argued that Patrick could testify at trial under Rule 404(b) based on a common scheme or plan, pointing out the following similarities: (1) Defendant gained access to Brad, Adam, and Patrick by befriending their parents and maintaining a good social relationship with them; (2) the three boys were all around 12 years of age during the events alleged; (3) the boys were of the same sex and race; (4) Defendant invited the children into his home and to spend the night there; and (5) the abuse included fondling the boys' genitals. Defendant's counsel argued that Patrick's testimony was too dissimilar and distant to be admissible and was otherwise unduly prejudicial under Rule 403. The trial court ultimately agreed with the State and ruled that Patrick could testify in Defendant's trial.

Brad, Adam, and Mrs. Lowe all testified for the State at trial consistent with the above summary, except that Brad and Adam were unable to recall at what age the abuse began[.] However, Brad testified that he believed most of the abuse took place in middle school when he would have been between ages 10 and 13, while Adam told the jury that he was "most likely" 12 years old at the time. Ms. Howell also testified for the State and video recordings of her forensic interviews with the twins were published to the jury.

Patrick testified as a Rule 404(b) witness consistent with his pretrial *voir dire* testimony. Defendant's counsel lodged an objection to Patrick's testimony, which was overruled by the trial court.

After resting its case, the State voluntarily dismissed several charges, namely: (1) two charges of statutory sex offense with a person who is 13, 14, or 15 relating to Brad; (2) two charges of first-degree sexual offense with a child relating to Brad; and (3) four charges of first-degree sex offense with a child relating to Adam. Defendant moved to dismiss the remaining charges, and that motion was denied. Defendant then testified in his own defense; afterwards, the trial court stated that "[a]t the close of all the evidence, the defendant's renewed motion to dismiss . . . is denied," though it does not appear from the transcript that Defendant made such a renewed motion on the record.

The jury received its charge and found Defendant guilty on all remaining counts. Defendant was sentenced to two consecutive sentences of 240 to 297 months imprisonment and gave notice of appeal in open court.

State v. Stevens, 278 N.C. App. 375, 859 S.E.2d 646 (2021) (Table), 2021 WL 2793722, at *1–3.

On direct appeal to the North Carolina Court of Appeals ("NCCOA"), petitioner argued:

1) the trial court erred in denying his motion to dismiss the first-degree sexual offenses charges because the evidence was insufficient to show Brad was under the age of 13 at the time of the

4

offense; 2) "in the alternative, [he] was denied effective assistance of counsel when his trial counsel failed to make a general motion to dismiss or argue that there was insufficient evidence that Brad was less than 13 when the acts occurred"; and 3) "the trial court erred in allowing [Patrick] to testify under Rule 404(b) about a previous alleged assault involving a different act performed in a much different manner." See Resp. App., Ex. 2, Pet'r's Br. to the NCCOA [D.E. 17-2] at 16–36.

On July 6, 2021, the North Carolina Court of Appeals issued an unpublished opinion finding no reversable error. Resp't App., Ex. 5 [D.E. 17-5] at 2–7 (printout of NCCOA opinion, Stevens, 278 N.C. App. 375, 859 S.E.2d 646 (2021) (Table), 2021 WL 2793722).

On August 8, 2021, petitioner filed *pro se* a petition for discretionary review ("PDR") in the North Carolina Supreme Court. See Resp't App., Ex. 6 [D.E. 17-6] at 4–5 (arguing: 1) "age was never proven, only guessed, leading to insufficient evidence," 2) the issue of being denied effective assistance of counsel was not even addressed by the Court of Appeals," and 3) "404b testimony should not have been allowed").

On May 4, 2022, the North Carolina Supreme Court denied petitioner's PDR. Resp't App., Ex. 7 [D.E. 17-7] at 2 (printout of State v. Stevens, 871 S.E.2d 519 (N.C. 2022)).

<u>Legal Standard</u>:

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial,"

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (alteration and internal quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

The Antiterrorism and Effective Death Penalty Act ("AEDPA") is intended "to ensure the state courts remain 'the principal forum for asserting constitutional challenges to state convictions,' rather than 'a preliminary step for a later federal habeas proceeding.'" Valentino v. Clark, 972 F.3d 560, 575 (4th Cir. 2020) (citation omitted).

Under AEDPA, a federal court cannot grant habeas relief in cases where a state court considered a claim on its merits unless (1) the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or (2) the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent if it either "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to the Supreme Court's result. Williams v. Taylor, 529 U.S. 362, 405 (2000).

A state court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407; see also White v. Woodall, 572 U.S. 415, 419–427 (2014).

> [Section 2254(d)] does not require that a state court cite to federal law in order for
> a federal court to determine whether the state court decision is an objectively

6

reasonable one, nor does it require a federal habeas court to offer an independent opinion as to whether it believes, based upon its own reading of the controlling Supreme Court precedents, that the [petitioner's] constitutional rights were violated during the state court proceedings.

Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000) (en banc), cert. denied, 534 U.S. 830 (2001).

Federal courts apply a highly deferential standard of review under 28 U.S.C. § 2254(d) and (e). See Dunn v. Madison, 583 U.S. 10, 12 (2017) (per curiam), reh'g denied, 583 U.S. 1086 (2018); Cullen v. Pinholster, 563 U.S. 170, 181 (2011). "A habeas petitioner meets this demanding standard only when he shows that the state court's decision was 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Madison, 583 U.S. at 12 (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)). Further, a state court's factual determination is presumed correct unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010).

Discussion:

As an initial matter, petitioner's "Opposing Motion for Summary Judgment [sic]," Pet'r's' Mot. [D.E. 28], fails to demonstrate that he is entitled to judgment as a matter of law under the governing standard of Federal Rule of Civil Procedure 56. See Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351, 354 (4th Cir. 2011) ("When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Rules of Civil Procedure.").

The court now turns to petitioner's first ground for relief – that the trial court erred in denying the motion to dismiss the first-degree sex offense charges. See Pet. [D.E. 1] at 5. In support, petitioner argues: "nothing was ever proved 'beyond a reasonable doubt,' especially the time, location, or age of any victim"; "Prosecution coaxed insinuations," but even these "coaxed

7

insinuations received no definite age, specific time, nor location"; "Age and beginning dates & locations are all primary factors to 1st degree stat. sex offense"; and "I don't know," "could have been," "maybe I was older," and "I don't remember" or "something like that" are the only answers to age or date questions"; and "those answers leave a lot of reasonable doubt." Id.

Petitioner argues he raised this ground for relief on direct appeal, that Brad's answers as to questions of age, "were things like 'maybe,' 'probably,' 'I don't know,' etc.," and that "these replies can be seen throughout the testimony of [Brad] and [Adam]." See Pet'r's' Mot. [D.E. 28] at 3. Petitioner disputes much of the trial testimony. See id. at 4–24. Petitioner argues that, at trial, Brad and Adam "said many things that can not be certified, or proven by any means. This not only includes events, but times, locations, and precisely what was done, as well as the numerous guesses as to what ages so called events could have happened." Id. at 15. Petitioner further argues there were numerous inconsistencies in Brad's testimony and cites to these inconsistencies in the trial transcript. See id. at 20. Petitioner also argues, "the time of the first offense was never proven. There was no specificity, nor start date about anything." Id. at 25.

Petitioner argued this first ground for relief on direct appeal to the NCCOA, contending that "the trial court erred in denying his motion to dismiss the first-degree sex offense charges[.]" See Stevens, 278 N.C. App. 375, 859 S.E.2d 646 (2021) (Table), 2021 WL 2793722, at *1.

As to the standard of review for this claim, the NCCOA noted:

We review the denial of a motion to dismiss for insufficiency of the evidence de novo. *State v. Phachoumphone*, 257 N.C. App. 848, 861, 810 S.E.2d 748, 756 (2018). Denial is proper when "there is substantial evidence (1) of each essential element of the offense charged . . . , and (2) of defendant's being the perpetrator of such offense." *State v. Scott*, 356 N.C. 591, 595, 573 S.E.2d 866, 868 (2002). Substantial evidence "is relevant evidence that a reasonable person might accept as adequate, or would consider necessary to support a particular conclusion. In this determination, all evidence is considered in the light most favorable to the State, and the State receives the benefit of every reasonable inference supported by that evidence." *State v. Hunt*, 365 N.C. 432, 436, 722 S.E.2d 484, 488 (2012). Further,

8

"[a]ny contradictions or conflicts in the evidence are resolved in favor of the State, and evidence unfavorable to the State is not considered." *State v. Miller*, 363 N.C. 96, 98, 678 S.E.2d 592, 594 (2009) (citations omitted).

Id. at *3.

The NCCOA noted the parties disputed whether petitioner had preserved this argument but held that, "because the trial court's statement reflected a renewed motion to dismiss had been made at close of evidence and was subsequently denied," this issue was adequately preserved. Id. at *4.

The NCCOA further noted that: "A defendant is guilty of a first-degree sexual offense 'if the person engages in a sexual act with a victim who is a child under the age of 13 years and the defendant is at least 12 years old and is at least four years older than the victim.'" Id. (quoting N.C. Gen. Stat. § 14-27.29 (2019)); "Because commission of the crime is dependent on the relative ages of the offender and victim, their ages are essential elements of the crime." Id. (citing In re Griffin, 162 N.C. App. 487, 494, 592 S.E.2d 12, 17 (2004)); "Thus, Defendant's motion to dismiss should have been allowed if substantial evidence failed to show directly or support a reasonable inference that Brad was younger than 13 years old when he was sexually abused by Defendant." Id. (citing Hunt, 365 N.C. at 436, 722 S.E.2d at 488).

The NCCOA considered this claim on the merits, and held:

the evidence introduced at trial supports a reasonable inference that Defendant committed multiple acts of sexual abuse when Brad was under the age of 13 despite Brad's inability to definitively recall when the abuse began. Brad, Mrs. Lowe, and Adam all testified that they met Defendant in the summer of 2007 when Brad and Adam were ten years old. By September of that year, the four took a trip together to Disney world for the twins' 11th birthday, and Brad stayed in Defendant's hotel room. Though Brad was unable to identify which specific trips included abuse, he testified that Defendant abused him in multiple hotel rooms on numerous trips. Mrs. Lowe testified that they went on a trip with Defendant "[w]henever there was a school vacation basically." Brad testified that he visited Defendant at his house "many times" after the summer of 2007 and—though he did not identify precisely when—that Defendant subjected him to sexual abuse "many times" in Defendant's bedroom. Brad further stated that this abuse began while he was in middle school, and therefore started sometime between ages 10 and 13.

9

Id.; see also id., n.3 ("Brad and Adam were between the ages of 10 and 13 in grades six through eight, turning 14 during their freshman year of high school.").

The NCCOA also noted: "Defendant cites precedents establishing that a criminal charge does not survive a motion to dismiss based on ambiguous evidence alone." Id. at *5 (citing State v. Pierce, 238 N.C. App. 537, 551, 767 S.E.2d 860, 870 (2014); State v. Hicks, 319 N.C. 84, 90, 352 S.E.2d 424, 427 (1987)). The NCCOA, however, found "additional evidence in the record would permit a jury to resolve any ambiguity in Brad's testimony," including: "Ms. Lowe's testimony that she and her sons first visited Defendant's home when Adam and Brad were ten years old and about to start middle school"; that "Brad stated he engaged with his first sex act with Defendant in middle school"; that "Adam testified that Defendant began abusing him when he 'most likely was 12,'" and "further testified that Defendant's initial focus was on Brad, telling the jury that '[a]t the beginning it was [Brad] that [Defendant] spent more time with, and that eventually transitioned to me spending more time with him when I was older, a little bit older'"; and that the "jury also viewed Brad's forensic interview with Ms. Howell during which he stated the abuse started when he was 'like[,] eleven or twelve.'" Id.

The NCCOA concluded:

> In sum, Brad testified to repeated, frequent abuse and the circumstances in which Defendant would commit that abuse. The evidence is sufficient to show that those circumstances arose while Brad was under the age of 13. Further, Adam testified that he was abused when he "most likely was 12," but that Defendant first focused his attention on Brad and did not turn to Adam until he was "a little bit older." Finally, the jury viewed Brad's forensic interview in which he stated he believed he was abused at age 11 or 12. Taken collectively and when viewed in the light most favorable to the State, witness testimony and corroborative evidence supports a reasonable inference that Defendant sexually abused Brad before he reached the age 13. We therefore hold that trial court did not err in denying Defendant's motion to dismiss.

Id.

The court has reviewed the trial transcript, the cases cited, and petitioner's arguments. Under the deferential standard of review under 28 U.S.C. § 2254(d)-(e), petitioner fails to demonstrate that the state court rulings regarding this claim reached a result contrary to, or unreasonably applied, clearly established federal law, or was based on an unreasonable determination of the facts, see Madison, 583 U.S. at 12; Pinholster, 563 U.S. at 181; Williams, 529 U.S. at 405. Thus, respondent is entitled to summary judgment on this first ground for relief.

The court now turns to petitioner's second ground for relief – that the trial court erred in permitting Patrick's 404(b) testimony. Pet. [D.E. 1] at 6. In support, petitioner argues:

> the trial court "allowed a 404(b) witness to mislead the Court & jury away from the charges. This witness is Propensity evidence. This allowanced produced an unfair prejudice that outweighed the probative value. There is no similarity, there is a distant time period. This witness is also an at least ten-time convicted felon, trying to gain a lighter sentence on his upcoming 2018 charges.

Id.

In his motion, petitioner argues that Patrick was convicted of crimes, Patrick's story changed several times "due to coaching," he should have been "disqualified from giving a statement," and, despite "all of these obvious lies and contradictions, the trial court, looking to win the trial at any cost, allowed this 404(b) witness' testimony." See Pet'r's Mot. [D.E. 28] at 13–15. Petitioner contends Patrick's "own parents do not trust him" and "know he is a con artist and a thief." Id. at 19. Petitioner further argues that, although Patrick's testimony was "admitted for the limited purpose of showing a common plan, identity, motive, etc.," the incident to which he testified "was the opposite [sic]" of the testimony by Brad and Adam. Id.

On direct appeal, the NCCOA identified this ground for relief as a contention that "the trial court erred . . . in allowing the jury to hear testimony from another alleged victim." See Stevens, 278 N.C. App. 375, 859 S.E.2d 646 (2021) (Table), 2021 WL 2793722, at *1.

11

As to the standard of review, the NCCOA noted:

A trial court's decision to admit evidence under [North Carolina Rules of Evidence] Rule 404(b) is likewise reviewed de novo. *State v. Beckelheimer*, 366 N.C. 127, 130, 726 S.E.2d 156, 159 (2012). The rule is a "general rule of inclusion," *State v. Coffey*, 326 N.C. 268, 278, 389 S.E.2d 48, 54 (1990), and "such evidence is admissible as long as it is relevant to any fact or issue other than the defendant's propensity to commit the crime." *State v. White*, 340 N.C. 264, 284, 457 S.E.2d 841, 852-53 (1995). The evidence in question is also subject to "requirements of similarity and temporal proximity." *State v. Al-Bayyinah*, 356 N.C. 150, 154, 567 S.E.2d 120, 123 (2002). Those similarities need not be unique but must possess "some unusual facts present in both crimes." *Beckelheimer*, 366 N.C. at 131, 726 S.E.2d at 159 (citation and quotation marks omitted). Rulings as to admissibility under Rule 403 are, unlike the foregoing, examined for an abuse of discretion. *Beckelheimer*, 366 N.C. at 130, 726 S.E.2d at 159.

Id. at *3–4.

The NCCOA assumed this argument was preserved, noting that petitioner's "counsel objected to Patrick's testimony before the jury," considered the argument on the merits, and held "that Patrick's testimony was properly admitted under Rules 404(b) and 403." See id. at *5, n.5. The NCCOA further held that the trial court did not abuse its discretion in admitting Patrick's testimony over Defendant's objection under Rule 403. Id. at *7.

Petitioner's second ground for relief challenges the state trial court's application of the North Carolina rules of evidence. Absent extraordinary circumstances, however, a state court's determination of an evidentiary question under state law does not give rise to a cognizable claim under § 2254. See, e.g., Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) (finding, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (collecting cases for the proposition that "federal habeas corpus relief does not lie for errors of state law"); Fullwood v. Lee, 290 F.3d 663, 692 (4th Cir. 2002) ("A state court's resolution of an

12

evidentiary question generally does not give rise to a cognizable claim under § 2254."); Thomas v. Taylor, 170 F.3d 466, 470 (4th Cir. 1999) (finding, "federal habeas relief simply does not lie for errors of state law"); Stockton v. Com. of Va., 852 F.2d 740, 748 (4th Cir. 1988) ("[T]he admissibility of evidence is generally a matter of state law which does not properly concern a federal habeas court unless it impugns the fundamental fairness of the trial."); Grundler v. North Carolina, 283 F.2d 798, 802 (4th Cir. 1960) ("It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented. The role of a federal habeas corpus petition is not to serve as an additional appeal.").

The court has reviewed the trial transcript. Succinctly stated, petitioner fails to demonstrate that the trial court's admission of Patrick's testimony was so prejudicial as to call into question the fundamental fairness of the trial. Stockton, 852 F.2d at 748; cf. Brecht v. Abrahamson, 507 U.S. 619, 638 n.9 (1993) (Applying the harmless error standard to habeas review and noting that, in an "unusual case," the trial court's error in the admission of evidence might be "deliberate and especially egregious" or so "combined with a pattern of prosecutorial misconduct" as to "infect the integrity of the proceeding[s].").

The record reflects the trial court: considered petitioner's arguments seeking to exclude Patrick's testimony and provided ample justification for its decisions, see Resp. App. [D.E. 34-1] at 7–36 (pretrial 404(b) hearing proceedings regarding Patrick's testimony); considered defense objections to Patrick's trial testimony, see id. [D.E. 34-2] at 189–223; and gave the jury limiting instructions as to their consideration of Patrick's testimony, see id. [D.E. 34-4] at 53–54 (informing the jury that the evidence as to Patrick "was received solely for the purpose of showing the identity of the person who committed the crime charged in this case, if it was committed, that the defendant had a motive for the commission of the crime charged in this case, that the defendant had the intent

13

to commit the crime charged in this case, that the defendant had the opportunity to commit the crime charged in this case, that there existed in the mind of the defendant a plan, scheme, system or design involving the crime charged in this case, the absence of mistake, or the absence of accident. If you believe this evidence, you may consider it but only for the limited purpose for which it was received. You may not consider it for any other purpose.").

Moreover, petitioner also makes no showing that the NCCOA decision regarding the admissibility of Patrick's testimony was either (1) based on an unreasonable determination of the facts in light of the evidence presented in state court, or (2) involved an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d); see Madison, 583 U.S. at 12; Pinholster, 563 U.S. at 181; Williams, 529 U.S. at 405. Accordingly, respondent is entitled to summary judgement on this second ground for relief.

The court now turns to petitioner's third ground for relief – that the "insufficient counsel claim ignored by the trial court violates the 6th Amendment [sic]." See Pet. [D.E. 1] at 8.

In support, petitioner argues:

> Counsel failed to challenge the sufficiency for the sex offence charges. How many age, dates, "specificity" are all required for determination of the elements of these charges. All of the answers to these types of questions were vague and not concrete. If the sufficiency of the evidence had been properly preserved, for appellate review, the defendant would be entitled to a dismissal of the charges against him. This was prejudicial because of the very high probability that the motion would be granted. Also, Defense Counsel Jim Freeman quit, leaving defendant without counsel for a period for at least 4 months in 2019.

Id.

The court liberally construes this ground for relief as an argument that the NCCOA failed to address his ineffective assistance of counsel (IAC) claim on direct appeal. As noted above, this IAC claim on direct appeal was raised in the alternative should the NCCOA find that his argument as to the insufficiency of the evidence was not preserved. See Resp. App., Ex. 2, Pet'r's Br. to the

14

NCCOA [D.E. 17-2] at 18–21 (arguing: "in the alternative, [he] was denied effective assistance of counsel when his trial counsel failed to make a general motion to dismiss or argue that there was insufficient evidence that Brad was less than 13 when the acts occurred"). Liberally construing his *pro se* PDR, petitioner re-raised this claim. See id., Ex. 6 [D.E. 17-6] at 4–5.

As also discussed above, on direct appeal, the NCCOA held that the argument regarding the sufficiency of the evidence for a first-degree sexual offense was preserved, assumed the argument regarding the admission of Patrick's 404b testimony was preserved, addressed the claims on the merits, and found petitioner had not demonstrated error. See Stevens, 278 N.C. App. 375, 859 S.E.2d 646 (2021) (Table), 2021 WL 2793722, at *3–7, n.5.

Accordingly, because the NCCOA found the arguments preserved for the purposes of the appeal, the NCCOA implicitly rejected petitioner's alternative claim arguing IAC due to trial counsel's purported failure to preserve these issues. It is presumed that the state courts adjudicated petitioner's IAC claim on the merits. See Harrington, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief," we "presume[ ] that the state court adjudicated this claim on the merits."); id. at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"). Petitioner has not met his "burden of overcoming this 'strong but rebuttable' presumption." Valentino, 972 F.3d at 576.

Thus, pursuant to the deferential standard of review under 28 U.S.C. § 2254(d)-(e), petitioner fails to show that the state court rulings regarding this claim reached a result contrary to, or unreasonably applied, clearly established federal law, or was based on an unreasonable determination of the facts, see Madison, 583 U.S. at 12; Pinholster, 563 U.S. at 181; Williams, 529 U.S. at 405, and respondent is entitled to summary judgment on this third ground for relief.

The court now turns to petitioner's fourth ground for relief – that the indictments were insufficient, in violation of the Fifth Amendment. See Pet. [D.E. 1] at 10.

In support, petitioner argues:

> The number of the same charges on the superseding indictments are pure guesstimation [sic]. Nothing specific to any deviant behavior was ever defined. There are no factual details, scientific, nor technological evidence connecting defendant to any of these claims. Not one claim on any indictment can be supported by clear & precise details, nor proof. They are all arbitrary numbers to win a case. Those charges are actually Double Jeopardy and multiplicity [sic].

Id.

Respondent argues, *inter alia*, that this ground for relief is not cognizable, unexhausted, procedurally defaulted, and meritless. See Resp. Mem. [D.E. 18] at 24–31.

Absent a valid excuse, a state prisoner must exhaust all available state-court remedies before seeking federal habeas corpus relief. See 28 U.S.C. § 2254(b); Woodford v. Ngo, 548 U.S. 81, 92 (2006) ("In habeas, the sanction for failing to exhaust properly (preclusion of review in federal court) is given the separate name of procedural default"). Thus, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

To satisfy the exhaustion requirement, petitioner must "fairly present" his claims to the state court. See Picard v. Connor, 404 U.S. 270, 275 (1971); Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000). A claim is "fairly presented" if petitioner presents the "substance of his federal habeas corpus claim" to the state court, including "both the operative facts and the controlling legal principles." Pethtel v. Ballard, 617 F.3d 299, 306 (4th Cir. 2010) (quotations and citation omitted).

A North Carolina prisoner may satisfy this exhaustion requirement by directly appealing the conviction to the NCCOA and then petitioning the North Carolina Supreme Court for

discretionary review, or by filing a motion for appropriate relief ("MAR") and then petitioning the

NCCOA for a writ of certiorari. See N.C. Gen. Stat. §§ 7A-27, 7A-31, 15A-1415, 15A-1422.

"The exhaustion requirement is not satisfied if petitioner presents new legal theories or

factual claims for the first time in his federal habeas petition." Breard v. Pruett, 134 F.3d 615, 619

(4th Cir.) (citation omitted), cert. denied sub nom. Breard v. Greene, 523 U.S. 371 (1998).

Petitioner bears the burden of proving that a claim was exhausted. Mallory v. Smith, 27 F.3d 991,

994 (4th Cir. 1994), cert. denied, 513 U.S. 1047 (1994).

Here, petitioner acknowledges that he did not raise this claim on direct appeal or in any

post-conviction proceedings. Pet. [D.E. 1] at 10–11. Petitioner explains: "This was claimed on

the list of proposed issues on Appeal. There were six. I was told that due to time and space, they

could only present three." Id. at 10. In his reply to respondent's answer, petitioner contradictorily

asserts, "every item claimed by Petitioner has been exhausted by each level of the state's court

process, as prescribed by the rules for filing for habeas corpus." See [D.E. 27] at 2. The record,

however, reflects that petitioner did not raise a claim regarding the sufficiency of the indictments

on direct appeal. See Resp. App., Ex. 2, Pet'r's Br. to the NCCOA [D.E. 17-2] at 16–36. In short,

petitioner fails to prove this fourth ground for relief was exhausted. See Mallory, 27 F.3d at 994.

Procedural default doctrine, a corollary to the exhaustion requirement, generally precludes

a federal court from reviewing the merits of a claim the state court found to be procedurally barred

based on independent and adequate state grounds. See Martinez v. Ryan, 566 U.S. 1, 10 (2012);

Dretke v. Haley, 541 U.S. 386, 392 (2004); Coleman v. Thompson, 501 U.S. 722, 747–48 (1991);

Rose v. Lundy, 455 U.S. 509, 522 (1982); Breard, 134 F.3d at 619 ("A procedural default occurs

when a habeas petitioner fails to exhaust available state remedies and 'the court to which the

17

petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" (quotation omitted)).

A state rule is "adequate" if it is firmly established and consistently applied by the state court, see Johnson v. Mississippi, 486 U.S. 578, 587 (1988); McCarver v. Lee, 221 F.3d 583, 588 (4th Cir. 2000), cert. denied, 531 U.S. 1089 (2001), and "independent" if the rule does not depend upon a federal constitutional ruling, see Ake v. Oklahoma, 470 U.S. 68, 75 (1985).

> A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court. "However, the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default."

Baker, 220 F.3d at 288 (citation omitted).

For the court to review a procedurally defaulted claim, petitioner must demonstrate either cause and prejudice resulting from the alleged violation of federal law, or that the failure to consider the claim will result in a fundamental miscarriage of justice. Id.; see Plymail v. Mirandy, 8 F.4th 308, 316 (4th Cir. 2021). A petitioner shows cause by establishing that something external to him prevented him from complying with the state procedural rule. Coleman, 501 U.S. at 753. To show prejudice, a petitioner must show he was actually prejudiced as a result of the alleged violation of federal law. See United States v. Frady, 456 U.S. 152, 167–68 (1982).

Section 15A-1419(a)(3) of the North Carolina General Statutes provides that a MAR shall be denied when a defendant is in an adequate position to have raised the claim on appeal but did not do so. Section 15A-1419(a)(3) is an independent and adequate state procedural bar. See Lawrence v. Branker, 517 F.3d 700, 714–15 (4th Cir. 2008); Rose v. Lee, 252 F.3d 676, 683–84 (4th Cir. 2001); Williams v. French, 146 F.3d 203, 209 (4th Cir. 1998). A federal habeas court

may not review the merits of a procedurally barred constitutional claim absent cause and prejudice or a miscarriage of justice. See Brown v. Lee, 319 F.3d 162, 169 (4th Cir. 2003).

As noted above, petitioner acknowledges on the face of the petition that his fourth ground for relief was "on the list of proposed issues on Appeal." Pet. [D.E. 1] at 10. Thus, although he has not presented this fourth ground for relief to the highest state court, because he failed to raise it on direct appeal, despite being able to do so, it is clear the claim would be procedurally barred under N.C. Gen. Stat. § 15A-1419(a)(3) if he now attempted to present this claim in a MAR to the state court. See Breard, 134 F.3d at 619; Baker, 220 F.3d at 288.

Accordingly, this claim is procedurally defaulted. See Lawrence, 517 F.3d at 714–15; McCarver, 221 F.3d at 588–89. Further, because petitioner has neither shown cause and prejudice for this procedural default, nor a fundamental miscarriage of justice, cf. Coleman, 501 U.S. at 750, the court's consideration of this ground for relief is barred, see Brown, 319 F.3d at 169; Baker, 220 F.3d at 288.

Alternatively, the court considers this unexhausted fourth ground for relief on the merits. See 28 U.S.C. § 2254(b)(2). The court liberally construes this fourth ground for relief as claims that his indictments violated his federal constitutional rights. These claims lack merit.

The court considers petitioner's bald claim that the indictments were insufficient because, "[n]othing specific to any deviant behavior was ever defined." See Pet. [D.E. 1] at 10.

"Elementary principles of due process require that an accused be informed of the specific charge against him." Hartman v. Lee, 283 F.3d 190, 194 (4th Cir. 2002) (citing Cole v. Arkansas, 333 U.S. 196, 201 (1948)). A person's "right to reasonable notice of a charge against him . . . [is] basic in our system of jurisprudence." Id. (citing In re Oliver, 333 U.S. 257, 273 (1948)). "Reasonable notice 'sufficiently apprises the defendant of what he must be prepared to meet.'"

19

Stroud v. Polk, 466 F.3d 291, 296 (4th Cir. 2006) (quoting Russell v. United States, 369 U.S. 749, 763 (1962)). "Variances and other deficiencies in state court indictments are not ordinarily a basis of federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as to amount to a deprivation of the defendant's right to due process." Ashford v. Edwards, 780 F.2d 405, 407 (4th Cir. 1985).

The court has reviewed the indictments and finds that they provide sufficient notice that petitioner was being charged with sex acts and indecent liberties against Brad and Adam. See Resp. App., Ex. 1, [D.E. 17-1] at 1–9. The failure of these indictments to specify specific dates or specific sexual conduct does not render the indictments fundamentally unfair. See, e.g., Hartman, 283 F.3d at 194, n.3 (noting, "the Constitution does not require the method by which the crime was committed to be alleged in the indictment," and citing Martin v. Kassulke, 970 F.2d 1539, 1543 (6th Cir. 1992), for a holding that the "Due Process Clause did not entitle rape defendant to indictment specifying whether first degree rape was committed by force or through victim's physical helplessness"); King v. Mirandy, No. 2:12-CV-81, 2013 WL 6882280, at *17 (N.D.W. Va. Dec. 31, 2013). Accordingly, this claim fails on the merits.

The court now turns to petitioner's bald claim that "[t]hose charges are actually Double Jeopardy and multiplicity [sic]." Pet. [D.E. 1] at 10.

"Multiplicity is 'the charging of a single offense in several counts' . . . . The Fifth Amendment's Double Jeopardy Clause prohibits multiplicitous indictments for crimes that 'are in law and in fact the same offense.'" United States v. Fall, 955 F.3d 363, 373 (4th Cir. 2020) (citations omitted).

Federal courts only "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody

20

in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); see Dickerson v. United States, 530 U.S. 428, 439, n.3 (2000).

Here, the record reflects that petitioner was convicted of fourteen counts in total: eight counts of statutory sexual offense of a thirteen-, fourteen-, or fifteen-year-old; four counts of first-degree sexual assault offense with a child; and two counts of indecent liberties with a child. See Resp. App., Ex. 1, [D.E. 17-1] at 16–21. The trial court, however, entered two judgments against petitioner: one judgment consolidating the offenses against Brad; and the other judgment consolidating the offenses against Adam. Id.; see also Resp. App. [D.E. 34-4] at 87–88. Pursuant to these consolidations, petitioner was sentenced only for the most serious offense, the statutory sexual offense, as to each victim. See N.C. Gen. Stat. §15A-1340.15(b).

Thus, petitioner is serving a sentence for two offenses, against each of two different victims, and these crimes have a different element – the identity of the victim – such that they are different for Double Jeopardy purposes. See Blockburger v. United States, 284 U.S. 299, 304 (1932) (noting, "the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not"), and his instant confinement also is unrelated to any "multiplicity." Accordingly, this claim also fails on the merits.

Next, although petitioner attaches to his petition allegations of other constitutional violations not raised in his grounds for relief, see Pet. Attach. [D.E. 1-1] at 72–75, he also acknowledges that he noted these issues to trial and appellate counsel, but they were not argued, see id. at 72. Thus, these claims are unexhausted, see O'Sullivan, 526 U.S. at 845, and, because he also did not raise these claims on direct appeal despite being able to do so, it is clear these

21

claims would be procedurally barred under N.C. Gen. Stat. § 15A-1419(a)(3) if he now attempted to present them to a state court in a MAR, see Breard, 134 F.3d at 619; Baker, 220 F.3d at 288.

Accordingly, these other claims also are procedurally defaulted, see Lawrence, 517 F.3d at 714–15, and petitioner again has shown neither cause and prejudice for this procedural default, nor a fundamental miscarriage of justice, cf. Coleman, 501 U.S. at 750, such that the court's consideration of these claims is barred, see Brown, 319 F.3d at 169; Baker, 220 F.3d at 288.

Finally, after reviewing the habeas petition in light of the applicable standard, the court determines that reasonable jurists would not find the court's treatment of any of these claims debatable or wrong, and none of the issues are adequate to deserve encouragement to proceed further. Accordingly, the court denies a Certificate of Appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Conclusion

For the above reasons, the court: GRANTS respondent's motion for summary judgment [D.E. 15]; DENIES petitioner's "Opposing Motion for Summary Judgment [sic]" [D.E. 28]; DENIES a Certificate of Appealability; and DIRECTS the clerk to close the case.

For the reasons discussed in the court's prior order, see Order [D.E. 30], the court also DENIES petitioner's "Pro-se party of right to motion for non-sealed documents [sic]" [D.E. 26].

Further, for good cause shown, the court GRANTS respondent's request to expand the motion to seal [D.E. 40], and SEALS permanently the unredacted versions of exhibits in this case.

SO ORDERED this 30th day of September, 2024.

Richard E. Myers II

RICHARD E. MYERS II
Chief United States District Judge